**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **WINDERMERE OAKS WATER** | § | |
| **SUPPLY CORPORATION, DANA** | § | |
| **MARTIN, WILLIAM EARNEST,** | § | |
| **THOMAS MICHAEL MADDEN,** | § | **No.  A-21-CV-00258-RP** |
| **ROBERT MEBANE, PATRICK** | § | |
| **MULLIGAN, JOE GIMENEZ,** | § | |
| **DAVID BERTINO, MIKE** | § | |
| **NELSON, DOROTHY TAYLOR,** | § | |
| **NORMAN MORSE,** | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ALLIED WORLD SPECIALTY** | § | |
| **INSURANCE COMPANY,** | § | |
| *Defendant* | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs Windermere Oaks Water Supply Corporation ("WSC"), Dana Martin, William Earnest, Thomas Michael Madden, Robert Mebane, Patrick Mulligan, Joe Gimenez, David Bertino, Mike Nelson, Dorothy Taylor, and Norman Morse's ("Plaintiffs") Motion for Partial Summary Judgment on the Duty to Defend, Dkt. 11; Defendant Allied World Specialty Insurance Company's Cross-Motion for Summary Judgment Regarding the Duty to Defend, Dkt. 12; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

1

## I.      BACKGROUND

This insurance coverage dispute revolves around whether Allied is required to provide Plaintiffs with a defense in the ongoing litigation against Plaintiffs pending in the 33rd Judicial District Court of Burnet County, Texas (the "Underlying Lawsuit")[1] based on an insurance policy executed between the parties. Dkt. 1, at 14-19. Plaintiffs include WSC, a non-profit Texas corporation "allegedly" organized under Chapter 67 of the Texas Water Code to supply water and sewage services, and individuals who served on the board of directors for WSC. *Id.* at 3; Dkt. 11-5, at 9. Plaintiffs brought this lawsuit seeking a declaration that Allied must provide them with a defense, as well as indemnify any damages, in the Underlying Lawsuit and seeking damages for breach of the insurance agreement and under the Prompt Payment of Claims Act. Dkt. 1, at 14-19.

The Water Plus Package policy at issue in this lawsuit was in effect annually for consecutive policy periods from March 17, 2016, to March 17, 2020. Dkt. 1, at 12; Dkt. 11-2. The policy included the Public Officials and Management Liability Coverage Form claims-made coverage (the "POML coverage provision"), which includes coverage for wrongful acts, and under which Plaintiffs, as defendants in the Underlying Lawsuit, requested defense and indemnity from Allied. Dkt. 1, at 12-14; Dkt. 11, at 9; Dkt. 11-2, at 6-7; Dkts. 11-3, 11-7. The POML coverage provision provides that Allied "ha[s] a right and duty to defend" WSC against any claims for a "wrongful act" to which the policy applies. Dkt. 11-2, at 119. Allied denied Plaintiffs'

---

[1] *See Rene Ffrench, et al. v. Friendship Homes & Hangars, LLC, et al.*, Cause No. 48292 pending in the 33rd Judicial District Court of Burnet County, Texas.

multiple requests for coverage under the policy based on exclusions contained in the POML coverage provision that bar coverage in certain situations. Dkt. 1, at 13-14; Dkts. 11-6, 11-8. The exclusions relevant to this lawsuit bar coverage for defense expenses relating to a "representation made in anticipation of a contract or any interference with performance of a contract"; where insured has willfully violated a federal, state, or local law, rule, or regulation; or where a "final adjudication establishes" a willful violation of any statute. Dkt. 11-2, at 122-23.

The Underlying Lawsuit alleges that between 2015 and 2016 the WSC exceeded its powers and the board of directors exceeded their authority and breached their duties by transferring a tract of land within the Spicewood Airport community (the "Airport Tract") to another member of the board, Dana Martin, and her company Friendship Homes & Hangars ("FHH"), "for pennies on the dollar"—resulting in losses to the cooperative of over $1,000,000. Dkt. 11-5, at 3. These losses were multiplied, according to the Underlying Lawsuit, when in 2019 the board of directors entered into a settlement agreement with Martin and FHH "that left the 2016 fire sale transaction largely intact and gave Martin even more valuable WSC property for no consideration." *Id.* at 3-4. The claimants to the Underlying Lawsuit bring claims for various *ultra vires* acts committed in violation of Section 20.002(c) of the Texas Business Organizations Code, including the unauthorized conveyance of property; improper use of the cooperative's assets; improper disbursement of cooperative's assets to benefit the directors; and failure to recover loss, as well as for breach of fiduciary duty. Dkt. 1, at 11; Dkt. 11-5.

3

In a separate lawsuit,[2] an entity created by residents and ratepayers sued WSC for failing to provide public notice in board of director meetings of its intent to sell the Airport Tract to another member of the board in violation of the Texas Open Meetings Act ("TOMA"). *See* Dkt. 12-1, at 1-2. A criminal court in the 33rd Judicial District Court of Burnet County, Texas ultimately entered final judgment (the "TOMA Judgment") finding that WSC violated the statute based on actions its board of directors took in 2015 and 2016 in regard to the sale of the Airport Tract. *See* Dkts. 12-1, 12-2; Tex. Gov't Code § 551.041. The Court of Appeals for the Sixth Appellate District of Texas affirmed the finding on appeal, but refused to void the board's actions based on the violation. Dkt. 12-3. The parties dispute whether the final judgment in this lawsuit triggered one of the exclusions contained in the policy that would release Allied from its duty to defend Plaintiffs in the Underlying Lawsuit. *Compare* Dkt. 11, at 25-28, *with* Dkt. 12, at 25-30.

Both parties moved for partial summary judgment on the issue of whether Allied has a duty to defend Plaintiffs in the Underlying Lawsuit. Dkt. 11, 12. The undersigned will address the parties' motions below.

## II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute

---

[2] *See Toma Integrity, Inc. v. Windermere Oaks Water Corporation*, No. 47531 (33rd Dist. Ct, Burnet County, Texas Nov. 19, 2018); *TOMA Integrity, Inc. v. Windermere Oaks Water Supply Corp.*, No. 06-19-00005-CV, 2019 WL 2553300, at *1 (Tex. App.—Texarkana 2019, pet. denied) (not designated for publication).

as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v.*

*Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    DISCUSSION

The parties each moved for summary judgment on the issue of whether Allied has a contractual duty under the POML coverage provision of the Water Plus Package policy to defend Plaintiffs in the Underlying Lawsuit. Dkts. 11, 12. The parties dispute whether certain exclusions in the POML coverage provision absolve Allied of its duty to defend Plaintiffs in the Underlying Lawsuit. *Compare* Dkt. 11, at 19-28, *with* Dkt. 12, at 7-9. While Allied argues that three of the exclusions in the POML coverage provision preclude coverage, Plaintiffs contend that none of the exclusions apply and, as such, Allied violated the Prompt Payment Act in refusing to offer them a defense in the Underlying Lawsuit. *Id.* The undersigned will address each of the parties' arguments below.

When interpreting insurance contract language, Texas courts apply the "eight-corners rule." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 308 (Tex. 2006). Under this rule, courts generally only consider the policy and the pleadings of the underlying claimant to determine whether a claim alleged by the pleading is within the policy coverage. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006) (citing *GuideOne,* 197 S.W.3d. at 308). If the four corners of a petition allege facts stating a cause of action which potentially falls within the

6

four corners of the policy's scope of coverage, the insurer has a duty to defend. *Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 528 (5th Cir. 2004); *see also St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.,* 249 F.3d 389, 395 (5th Cir. 2001)* ("If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit."). While the insured has the burden of establishing that the insurance policy covers the claim, the Court must resolve all doubts regarding the duty to defend in favor of the insured and construe the underlying pleadings liberally. *Star-Tex Res., L.L.C. v. Granite State Ins. Co.*, 553 F. App'x 366, 369 (5th Cir. 2014); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998).

## A.   The Contractual Liability Exclusion

Allied first seeks to evade any duty to defend Plaintiffs in the Underlying Lawsuit based on the contractual liability exclusion, which excludes coverage under the POML coverage provision for suits "based upon, attributed to, arising out of, in consequence of, or in any way related to any contract or agreement to which the insured is a party."[3] Dkt. 11-2, at 122. Allied argues that under Texas law, the contractual liability exclusion need only bear an "incidental relationship" to the conduct alleged in the Underlying Lawsuit to bar coverage. Dkt. 12, at 17 (citing *Gemini Ins. Co. v. Andy Boyd LLC,* 243 F. App'x 814, 816 (5th Cir. 2007) ("Texas law

---

[3] The full exclusion reads as follows:

"**11. Contractual Liability**

'Damages,' 'defense expenses,' costs or loss based upon, attributed to, arising out of, in consequence of, or in any way related to any contract or agreement to which the insured is a party or a third-party beneficiary, including, but not limited to, any representations made in anticipation of a contract or any interference with the performance of a contract." Dkt. 11-2, at 122.

states that when an exclusion prevents coverage for injuries 'arising out of' particular conduct, a claim need only bear an *incidental relationship* to the described conduct for the exclusion to apply." (cleaned up))). Because the claims in the Underlying Lawsuit "are clearly based upon, arise out of, or in some way involve WSC's agreement to sell the Airport Tract to Martin and FHH," Allied's argument goes, they are sufficiently related to the sale contract so as to fall under the contractual liability exclusion. *Id.* at 18-21 ("the agreement to sell the Airport Tract, need not be the 'focus' of the Underlying Lawsuit in order for Exclusion 11 to preclude coverage").

Plaintiffs, on the other hand, insist that the contractual liability exclusion does not apply to the Underlying Lawsuit because "[t]he focus of the Underlying Lawsuit is not on any contract or even any representations made in anticipation of any contract, but rather on the *pre*-contract misdeeds and conduct by the [Plaintiffs]." Dkt. 11, at 20. Plaintiffs emphasize that the claims in the Underlying Lawsuit do not arise from any breach of the contract for the sale of the Airport tract, but rather Plaintiffs' alleged breach of their fiduciary duties, "by way of *ultra vires* acts and *pre*contract misdeeds" in failing to market, advertise, and sell the Airport Tract for the best price available. *Id.*; Dkt. 23, at 16-17 ("the Directors purportedly breached their fiduciary duties to the WSC, completely ***independent*** of any contract or agreement"); *see also* Dkt. 11-5, at 18, 22 (alleging that Plaintiff board members "[n]ever listed or advertised the Airport Tract or otherwise marketed the [Airport] Tract" in breach of their fiduciary duties to WSC).

Both parties cite *Admiral Insurance Co. v. Briggs*, 264 F. Supp. 2d 460 (N.D. Tex. 2003), and *Carolina Casualty Insurance Co. v. Sowell*, 603 F. Supp. 2d 914, 926 (N.D. Tex. 2009), to support their respective positions. *See* Dkt. 11, at 20-21; Dkt. 12, at 17-12; Dkt. 23, at 7-11. In *Briggs*, the court held that a contract exclusion for claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or *in any way involving* any oral or written contract or agreement" did not apply to an underlying lawsuit regarding stock fraud perpetuated to convince a landlord to accept stock as payment under a lease. *Briggs*, 264 F. Supp. 2d at 463. Because the lease contract did not cause the stock fraud, but rather "provided the context in which the stock fraud took place," there was no causal relationship between the lease contract and the stock fraud claim so as to support application of the exclusion. *Id.* Moreover, the court reasoned that the insurer's interpretation of the exclusion language was "overly broad" because it would encompass "all stock fraud claims because they all involve a contract for the sale of stock"—claims that the insurer had already conceded would warrant coverage under the policy. *Id.* at 462.

In *Sowell*, in contrast, a contract exclusion provision applicable to lawsuits "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any oral or written contract or agreement" was found to apply to underlying claims that were "causally connected to [a] lease contract and could not exist without the lease." *Sowell*, 603 F. Supp. 2d at 927, 936. In addition to finding that claims for the breach of a lease contract were covered by the contract exclusion, the court found that a negligence claim arising from the underlying defendant's

failure to obtain insurance as required under the lease contract also fell under the contract exclusion because, regardless of the framing of the claim as one of negligence, "the duty to obtain insurance on the [l]eased [p]roperty arises directly and exclusively from the terms of the lease." *Id.* at 927-28. In contrast to *Briggs*, the court in *Sowell* reasoned that "the lease is not merely contextual; it provides the basis for the claim." *Id.* at 929.

Here, the duties Plaintiffs are accused of breaching in the Underlying Lawsuit do not "arise[] directly and exclusively from the terms of the [contract]" for sale of the Airport Tract, but rather arise from common law and statutory duties the WSC board of directors owed to the WSC and its member owners to maximize the value of the sale of the Airport Tract. Dkt. 11-5, at 24, 29, 35, 36-38 ("The 2016 Board had a duty to vigorously market the Airport Tract and to achieve the best price available."); *see Sowell*, 603 F. Supp. at 927-28. While Allied is certainly correct that the agreement to sell the Airport Tract forms part of the Underlying Lawsuit in that the suit seeks to have the sale enjoined or set aside, the WSC board of directors could have breached their duties to their owner members without any ultimate sale of the Airport Tract since their alleged misconduct arises from their failure to properly market the Airport Tract, regardless of whether those misdeeds culminated in the allegedly improper sale of the land to another member of the board of directors. Dkt. 12, at 19; Dkt. 11-5, at 40; *see Briggs*, 264 F. Supp. 2d at 463.

Moreover, the Underlying Lawsuit does not arise from obligations contained in the sale agreement or any breaches of the sale agreement itself. *See RLI Ins. Co. v.*

*Interstate Battery Sys. Int'l, Inc.*, No. 3:20-CV-1888-D, 2021 WL 5164937, at *8-10 (N.D. Tex. Nov. 5, 2021) ("There is a causal, incidental relationship when the claims at issue depend on the breach of contract or obligation under the contract."). The Underlying Lawsuit accuses Plaintiffs of breaching duties owed to the WSC and its member owners, not any duty imposed by the sale agreement itself. Dkt. 11-5, at 38 ("The Directors' refusal or failure to perform such nondiscretionary duty is defalcation, which constitutes willful or intentional misconduct and a breach of each Director's duties to the WSC and its Member Owners and is beyond the scope of their authority."); *see id.* ("the Director Defendants stand in a fiduciary capacity vis-à-vis the WSC and its Member Owners").

Although the Fifth Circuit has instructed that the words "'arising out of,' when used within an insurance policy, are 'broad, general, and comprehensive terms effecting broad coverage,'" Allied's interpretation of the exclusion is "overly broad" and fails to take into account that "the key is whether the claim arises from a breach of contract or obligation under the contract, not whether there existed a contract at all." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998) (quoting *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.,* 189 F.2d 374, 378 (5th Cir. 1951)); *Briggs*, 264 F. Supp. 2d at 462; *RLI Ins.*, 2021 WL 5164937 at *10. The undersigned finds that the contractual liability exclusion does not apply to the Underlying Lawsuit because those claims "do not arise out of obligations or breach of [that] contract." *RLI Ins.*, 2021 WL 5164937 at *9.

### B.    Criminal Acts Exclusion

Allied next argues that the Underlying Lawsuit falls within the criminal acts exclusion of the POML coverage provision, which bars coverage for "'[d]amages,' 'defense expenses,' costs or loss arising out of or contributed to by any fraudulent, dishonest, criminal or malicious act of the insured." Dkt. 12, at 25-30; Dkt. 11-2, at 122. Allied contends that Plaintiffs "willful[ly]" violated the TOMA when they held a closed meeting that failed to include public notice of the sale of the Airport Tract. Dkt. 12, at 26. It is undisputed, based on the TOMA Judgment,[4] that that the WSC board of directors violated the TOMA when it "failed to include the subject matter of the meeting from its public notices issued December 19, 2015, and February 22, 2016." Dkt. 12-2, at 2; Dkt. 12-3, at 3.

Plaintiffs deny that the TOMA Judgment triggered the criminal acts exclusion, arguing that it did not include a finding that the WSC board of directors engaged in "any intentional, deliberate, or stubborn" conduct in failing to publish the agenda, and in any event, the TOMA is a strict liability statute that includes no intent element. Dkt. 11, at 27 (citing *Tovar v. State*, 978 S.W.2d 584, 587 (Tex. Crim. App.

---

[4] Plaintiffs argue that consideration of the TOMA Judgment violates the eight corners rule applicable to insurance disputes. Dkt. 11, at 28.  Although the Supreme Court of Texas has never adopted an exception to the eight corners rule, it has suggested that it would recognize a narrow exception where it is "'impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.'" *GuideOne*, 197 S.W.3d at 308. The undersigned finds that such an exception applies to these circumstances and takes judicial notice of the TOMA Judgment for the purposes of resolving whether criminal acts and violation of law exclusions bar coverage under the POML coverage provision. *Sparkman v. Charles Schwab & Co.*, 336 F. App'x 413, 415 (5th Cir. 2009) ("One court may take judicial notice of another district court's judicial actions.").

1998) ("based upon the plain language of the section 551.144 [of the TOMA] and the rules of grammar and common usage, a member of a governmental body can be held criminally responsible for his involvement in the holding of a closed meeting which is not permitted under the Act regardless of his mental state with respect to whether the closed meeting is permitted under the Act")).

Allied responds that Plaintiffs' reliance on *Tovar* is misplaced because that case dealt with section 551.144 of the TOMA, rather than the section 551.041 at issue here, and in fact, section 551.144 includes language requiring proof that an "individual **knowingly** called a closed meeting." Dkt. 12, at 27 (citing *Tovar*, 978 S.W.2d at 587). Yet in *Tovar*, the court interpreted the word "knowingly" as a modifier to other forms of liability potentially incurred with regard to holding a closed meeting, but ultimately found that the TOMA "impose[s] strict liability" because "a member of a governmental body can be held criminally responsible for his involvement in the holding of a closed meeting which is not permitted under the Act regardless of his mental state with respect to whether the closed meeting is permitted under the Act." Tex. Gov't Code § 551.144; *Tovar*, 978 S.W.2d at 587.

As relevant here, the section under which the WSC board of directors were found liable under the TOMA Judgment contains no language regarding mental state, and instead simply states that "[a] governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." Tex. Gov't Code § 551.041. Even if *Tovar* is "not applicable" here, as Allied insists, there is no basis in section 551.041 or the TOMA Judgment to support Allied's

contention that Plaintiffs' TOMA violation was willful in nature. Dkt. 12, at 27. And as Plaintiffs point out, the pleadings underlying the TOMA Judgment are "devoid of factual allegations that there was any intentional, deliberate, or stubborn conduct by the Directors." Dkt. 11, at 27. The undersigned finds that the criminal acts exclusion does not apply to Allied's duty to defend in the Underlying Lawsuit and will recommend that Allied's motion for summary judgment on this basis be denied.

### C.   Violation of Law Exclusion

Lastly, Allied argues that it need not offer Plaintiffs a defense in the Underlying Lawsuit because the violation of law exclusion found in the POML coverage provision precludes coverage for "'[d]amages,' 'defense expenses,' costs, or loss arising from an insured's willful violation of any federal, state, or local law, rule, or regulation." Dkt. 12, at 25-30; Dkt. 11-2, at 123. Allied once again argues that the TOMA Judgment trigged the violation of law exclusion because Plaintiffs, acting as members of the WSC board of directors, willfully violated the TOMA when they failed to "include the subject of the prospective sale of the Airport Tract when it held the meeting on February 22, 2016." Dkt. 12, at 28 (citing Dkt. 12-2, at 2). Allied relies on the same arguments the undersigned has already rejected in arguing that the board of directors' violation of the TOMA was willful in nature. *Id.* at 27-30.

Because, as  discussed above, the TOMA Judgment did not include any finding that the WSC board of directors willfully violated the statute, and there is no allegation of willful conduct in the pleadings that form the basis of the TOMA Judgment, the undersigned rejects Allied's contention that the criminal acts

14

exclusion bars coverage under the POML provision. Allied's motion for summary judgment should be denied, and Plaintiffs' motion for summary judgment should be granted to the extent it seeks a declaration that Allied owes them a defense in the Underlying Lawsuit. The undersigned will address below whether Allied violated the Prompt Payment Act in declining to provide Plaintiffs a defense in the Underlying Lawsuit.

### D.   Prompt Payment of Claims Act Violation

Plaintiffs move for summary judgment under the Prompt Payment of Claims Act, arguing that Allied's wrongful denial of coverage entitles them to "an 18% penalty on defense fees and expenses, as well as attorneys' fees incurred in prosecuting this claim." Dkt. 11, at 28-29. Under the Prompt Payment of Claims Act contained in Chapter 542 of the Texas Insurance Code, an insurer who improperly denies payment for a claim under an insurance policy is "liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees." Tex. Ins. Code § 542.060; *see also Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 652 (Tex. 2009) (Prompt Payment of Claims Act applies to "insurer's breach of its duty to defend under a liability policy.").

Allied maintains that the Prompt Payment of Claims Act does not apply here because it "has no obligation to pay Plaintiffs' defense costs," but does not dispute that the statute would apply to its failure to offer a defense to Plaintiffs in the

Underlying Lawsuit where no exclusion under the policy bars coverage under the POML coverage provision. Dkt. 12, at 30-31. Because Allied owes Plaintiffs a defense in the Underlying Lawsuit, and has to date improperly evaded its duty to defend under the policy, Allied is liable under the Prompt Payment of Claims Act. The undersigned will recommend that the District Court grant Plaintiffs' motion for summary judgment on its Prompt Payment of Claims Act claim, and deny Allied's motion for summary judgment in this regard.

## IV.    RECOMMENDATIONS

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Partial Summary Judgment on the Duty to Defend, Dkt. 11, be **GRANTED**, and Allied's Cross-Motion for Summary Judgment Regarding the Duty to Defend, Dkt. 12, be **DENIED**.

The referral of this case to the Magistrate Court should now be canceled.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report

and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED February 8, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE